**James R. ZIMMERMAN and Jessica G. Zimmerman, his wife, Plaintiffs,**

v.

**Albert SUSIE, et al., Defendants.**

**Civ. A. No. 81–1689.**

United States District Court, W. D. Pennsylvania.

March 18, 1982.

---

Stanley Yorsz, Pittsburgh, Pa., for plaintiffs.

Dennis Wolford, Beaver, Pa., Richard Davis, Midland, Pa., Craig R. McKay, Asst. U. S. Atty., Pittsburgh, Pa., for defendants.

## MEMORANDUM

McCUNE, District Judge.

This is an action by a husband and wife (Zimmermans) which arises out of problems that developed following their purchase of a house in the latter half of 1978. The defendants are Albert Susie and The Basinger Agency, a real estate agent and his employ-er; Raymond and Lucy Presutti, and Louis and Elsie Pichelli, the sellers of the house; and Ralph J. Guyton and The Farmers Home Administration (FmHA) of the United States Department of Agriculture.

The case is before us now on the motion of the federal defendants, Guyton and FmHA, to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. "[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The following summary of the facts is taken from the allegations in the plaintiffs' complaint.

In August, 1978, Albert Susie, a real estate agent for The Basinger Agency, showed the Zimmermans a house at 657 Beaver Avenue in Midland, Pennsylvania. The house was owned by Louis and Elsie Pichelli and Raymond and Lucy Presutti. Susie advised the Zimmermans that financing for the house could be arranged through the Farmers Home Administration. Using a form supplied by FmHA, the Zimmermans executed an option to purchase the property, which was given to enable them to obtain an FmHA loan. As part of the option, the seller agreed to provide certification that the house was free of termite infestation and unrepaired termite damage or a description of any termite damage which remained unrepaired. Though it is not specifically alleged in the complaint, it can be inferred from the specific allegations, as it is asserted in the plaintiffs' brief, that Guyton, acting in his official capacity for the FmHA, then conducted an inspection of the house. Thereafter, the Zimmermans purchased the house for $28,-500, executing a Promissory Note secured by a mortgage to FmHA. Shortly after moving in, the Zimmermans discovered substantial termite damage which rendered the kitchen useless.

This action was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680.[1] The plaintiffs seek recision of the contract (Count I), an injunction against FmHA from foreclosing on the mortgage should they cease payments in order to mitigate their damages (Count III), and damages in excess of $10,000 for the failure of the defendants to know of, or advise plaintiffs of, the unrepaired termite damage.

The federal defendants rely primarily on the decision of the Supreme Court in *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) in arguing that this court is without jurisdiction to hear this claim under the Federal Tort Claims Act. *Neustadt* also involved a house in which structural problems were discovered shortly after purchase. In that case, the sellers of the house had proceeded through a lending agent to have their property inspected and appraised by the Federal Housing Authority (FHA), so that prospective buyers would be aware that the house would qualify for federal mortgage insurance. An FHA appraiser visited and inspected the home and, turning up no defects which would disqualify the property for mortgage insurance, issued a conditional commitment indicating approval for insurance at an appraised value of $22,750.

Neustadt, after receiving an FHA insured loan, purchased the house. Within one month substantial cracks appeared in the walls and ceilings. It was determined that due to poor drainage, the clay beneath the foundation of the house had shifted, causing the house to move and crack.

Neustadt brought an action against the United States seeking recovery of the difference between the fair market value of the property and the purchase price. His complaint alleged that the FHA inspection and appraisal had been negligently conducted, that Neustadt was justified in relying on the results of the inspection and appraisal, and that he would not have bought the house except for the negligence of FHA. The district court found that reasonable care by the appraiser would have warned Neustadt of the serious structural defects and awarded him the difference between fair market value and purchase price. The Fourth Circuit Court of Appeals affirmed, rejecting the argument of FHA that the case fell within the misrepresentation exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(h).[2] They reasoned that because the appraisal procedure was designed to protect prospective home purchasers, the FHA owed a specific duty to the purchasers to make a careful appraisal. Having assumed a specific duty, they ruled, if the government negligently performs it, "a party injured thereby may recover damages from the United States even though the careless performance of the duty may have been accompanied by some misrepresentation of fact." *United States v. Neustadt*, 281 F.2d 596, 599 (4th Cir. 1960).

The Supreme Court reversed, noting that the Fourth Circuit's analysis did not meet the question of whether § 2680(h) took the claim outside the scope of the Federal Tort Claims Act.

To say, as the Fourth Circuit did, that a claim arises out of "negligence" rather than "misrepresentation" when the loss suffered by the injured party is caused by

---

1. The Zimmermans originally brought an action in the Court of Common Pleas of Beaver County in 1979. That case was removed to the Federal Court at Civil Action No. 79–1806. By an *Order of Court*, Diamond, J., that complaint was dismissed as to the federal defendants, without prejudice, for failure to exhaust administrative remedies, and the action was remanded. Following denial of their administrative claim by the Department of Agriculture, the Zimmermans instituted the present action. We are advised by counsel that the original case is still pending in the Beaver County Court.

2. The Federal Tort Claims Act is a partial waiver of sovereign immunity for recovery of damages for certain tortious acts or failures to act of employees of the United States. Section 2680(h) provides that "[t]he provisions of this chapter and section 1346(b) of this title (vesting exclusive jurisdiction of tort actions against the United States in the district courts) shall not apply to ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights..."

the breach of a "specific duty" owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation..."

366 U.S. at 706, 81 S.Ct. at 1300. The question, then, was whether Congress intended to include "negligent misrepresentation" as an exception to the allowable tort claims against the government when it drafted § 2680(h). This question the Supreme Court answered in the affirmative.

We believe that *Neustadt* provides the law of the case. We write at length about it to make clear our understanding of its holding and rationale in order to demonstrate the principled basis for our respectful disagreement with the Sixth Circuit Court of Appeals, which has adopted the argument these plaintiffs urge upon us. In *Neal v. Bergland,* 646 F.2d 1178 (6th Cir. 1981), on facts similar to the case at bar, the Sixth Circuit ruled that by its regulations FmHA had voluntarily undertaken a duty to inspect and supervise, and that it could be held liable for a negligent performance of this undertaking. Distinguishing *Neustadt,* they noted a "difference between the application of the Federal Tort Claims Act to a situation dealing with a cause of action based on misrepresentation and a cause of action based on negligent performance of an operational task." *Id.* at 1183. The claim in their case "[was] not based on misrepresentation, as in the issuance of a false or inaccurate appraisal report, but rather on FmHA's failure to use due care in a voluntary undertaking, i.e., inspection and supervision of the construction of her house." *Id.* at 1184.

. This rationale is taken up by the plaintiffs in this case, who contend that

> ... it was the negligent failure of FmHA, through Mr. Guyton, to insure

that the necessary termite inspection was undertaken and a Certificate issued, the negligent failure to insure that a *proper* inspection was made of the home, and the negligent failure to insure that Paragraph 11 [relating to the seller's duty to provide a Certificate] was brought to Plaintiffs' attention that is the gravamen of Plaintiffs' cause of action. These are not misrepresentations but failures to act and failures to disclose.

Plaintiffs' Brief at 6. (Emphasis in original). They further argue that "[i]nstantly (sic), the government has ... acted negligently rather than affirmatively misrepresenting information." (Plaintiffs' Brief at 7).

■ These references, we believe, demonstrate how the plaintiffs misunderstand the tort of "misrepresentation" and, consequently, misperceive the holding in *Neustadt.* The American Law Institute's Restatement (Second) Torts (1976) states, as follows:

> § 552. Information Negligently Supplied for the Guidance of Others.
>
> 1) One who, in the course of his business, profession, or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in *obtaining* or communicating the information. (Emphasis supplied).

(This definition is not materially different, for our purposes, from that cited by the Supreme Court in *Neustadt* from the Restatement of Torts (1938). *See, U. S. v. Neustadt,* 366 U.S. at 706, 81 S.Ct. at 1300, n.16). While "misrepresentation" when used in everyday speech might refer to the actual assertion of information which is contrary to fact, the legal use of "misrepresentation" as a tort encompasses more.[3] The duty of using reasonable care applies not only to the passing of information but

---

**3.** Herein lies the basis for our disagreement with the Sixth Circuit in *Neal v. Bergland, supra.* Whereas they, apparently, read *Neustadt* as being based on "the issuance of a false or inaccurate appraisal report," 646 F.2d at 1184, we interpret it more broadly.

also to the gathering of the information. A person who fails to use due care in obtaining information which, in the course of his business, he supplies to someone else for their use is liable for damages under the theory of misrepresentation, not under a general theory of negligence. The failure to inspect alleged here, the "negligent performance of an operational task" referred to by the Sixth Circuit, when applied to one who is alleged to have a duty to supply information, is nothing more than a failure to use reasonable care in the collection of information, i.e., the tort of misrepresentation. Because there has been no waiver of sovereign immunity as to claims based on the tort of misrepresentation, this court is without jurisdiction to entertain the claim.

The plaintiffs, in their brief, urge that their claim "should certainly be allowed to continue regardless of the disposition of the tort claim," (Plaintiffs' Brief at 9) on a theory of breach of contract. They assert that the FmHA regulations were made a part of the option contract and mortgage, and that, therefore, a contractual duty to inspect may be implied from the general purpose of the loan—to provide decent, safe, and sanitary housing. In this regard they cite *Kipf v. United States*, 501 F.Supp. 110 (D.Mont.1980).[4] Whether or not the complaint sufficiently sets out a contract claim, we must dismiss for lack of subject matter jurisdiction on this ground as well. The district courts are vested with "original jurisdiction, concurrent with the Court of Claims, of... [a]ny other civil action or claim against the United States, *not exceeding $10,000 in amount*, founded upon ... any express or implied contract with the United States..." 28 U.S.C. § 1346. Because the plaintiffs claim damages in excess of $10,000, this court does not have jurisdiction to adjudicate their contract claim.

For the foregoing reasons, the federal defendants' motion to dismiss for lack of subject matter jurisdiction is granted. There being no independent basis for this court to assert jurisdiction over the remaining defendants, the case is dismissed.[5]

---

4. We note at this point that the court in *Kipf* held, as we hold today, that *Neustadt* is controlling as to tort claims of the kind presented here, 501 F.Supp. at 113, a fact not mentioned in the plaintiffs' brief. We also note that in *Neal v. Bergland*, discussed in the text, the Sixth Circuit ruled that the regulations were not so specific as to create a contractual duty on the part of FmHA to inspect, 646 F.2d at 1181, also not referred to by plaintiffs.

5. A dismissal for lack of subject matter jurisdiction is, of course, not an adjudication on the merits. It is, therefore, a dismissal without prejudice and does not preclude any other action brought in an appropriate forum. *See* Fed. R.Civ.P. 41(b); *Korvettes, Inc. v. Brous*, 617 F.2d 1021 (3d Cir. 1980).