### SUNQUEST INFORMATION SYSTEMS, INC., a Pennsylvania Corporation, Plaintiff,

v.

### DEAN WITTER REYNOLDS, INC., a Delaware Corporation, The Compucare Company, a Delaware Corporation, Defendants.

No. Civ.A. 98–188J.

United States District Court,
W.D. Pennsylvania.

March 24, 1999.

648

Bruce C. Fuchs,, Mark E. Ulven, Klett, Lieber, Rooney & Schorling, Pittsburgh,, PA, for Sunquest Information Systems, Inc., a Pennsylvania Corporation, plaintiff.

David A. Brownlee, Kenneth M. Argentieri, J.E. Hannon, Jr., Kirkpatrick & Lockhart, Pittsburgh, PA, for Dean Witter Reynolds, Inc., a Delaware Corporation, defendant.

Mark D. Shepard, Steven F. Baicker–McKee, K. Mark Hall, Babst, Calland, Clements & Zomnir, Pittsburgh, PA, for Compucare Company, a Delaware Corporation, defendant.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

In this case, plaintiff Sunquest Information Systems, Inc. filed a nine-count complaint against defendants Compucare Company and Dean Witter Reynolds, Inc., alleging that both defendants are liable to it as a result of misconduct arising out of Sunquest's acquisition of Antrim Corporation, a former subsidiary of Compucare that markets medical software. Plaintiff avers that defendants improperly failed to disclose hidden problem areas within Antrim, including "Year 2000" or "Y2K" deficiencies in its software products, that were material to plaintiff's decision to go through with the acquisition. Both defendants admit that plaintiff has properly pleaded causes of action for indemnity, breach of contract and breach of express warranty in counts I–III of the complaint, but have filed motions under Fed.R.Civ.P. 12(b)(6) to dismiss those portions of the complaint that sound in breach of implied warranty, negligent and fraudulent misrepresentation, securities fraud and rescission. For the following reasons, I will grant Compucare's motion in its entirety, but grant Dean Witter's motion only in part.

## I.

According to the allegations of the complaint, which must be credited as true for the purposes of deciding this motion, "Sunquest develops, markets and supports integrated computer information systems for hospitals and other health-care providers[,] ... provid[ing] comprehensive information processing for hospital laboratory operations." Dkt. no. 1, ¶ 6. Plaintiff avers that it "is a leader in this field...." Id. In September 1996, plaintiff "became interested in acquiring information systems for out-patient laboratory operations...." Id. ¶ 7. Defendant Dean Witter, an investment banking firm retained by defendant Compucare, introduced plaintiff to Compucare and its subsidiary, Antrim. Id. ¶ 8. The parties negotiated for the sale of all outstanding shares of Antrim from Compucare to Sunquest; on November 26, 1996, a Stock Purchase Agreement ("SPA") was signed. Id., ¶ 9; see also dkt. no. 1, Exh. A (SPA).

The SPA is a thirty-nine page, single-spaced document setting forth the representations of Sunquest and Compucare. See dkt. no. 1, Exh. A. It contains an integration clause, as well as a choice of law provision reciting that the contract is to be "governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania...." Id. ¶¶ 9.6, 9.7. Plaintiff contends that some of Compu-

care's representations did not comport with the actual condition of Antrim; these form the basis for counts I–III of the complaint and are not specifically at issue here. Sunquest also avers, however, that defendants made a variety of oral misrepresentations about Antrim, specifically:

a. Antrim's most recent laboratory and financial information systems release was fully functional.

b. Antrim's most recent laboratory and financial information systems release was Year–2000 compliant (i.e., capable of handling the transition through the Year 2000 without failure) and had been developed and beta-tested.

c. Antrim had released a fully functional information system that could connect reference laboratories with hospital laboratories at multiple sites to create integrated information-delivery networks.

d. Antrim had released a fully functional blood bank system to process and manage information on donors and transfusion services for medical laboratories and blood centers.

e. Antrim had net operating losses of at least $4.9 million that could be carried forward for federal income tax purposes by Sunquest after the Stock Purchase. The net operating loss carry-forward was valuable to Sunquest as an offset against future federal taxable income.

Dkt. no. 1, ¶ 11. Despite the integration clause, Sunquest seeks to hold defendants liable for these alleged misrepresentations under tort and securities fraud theories. It also alleges that Compucare "created a false sense of urgency about closing the transaction and intentionally restricted Sunquest's access to important information regarding Antrim . . . ." *Id.* ¶ 14.

As a result of these alleged misrepresentations, plaintiff avers that it was induced to consummate the SPA for $5 million, which it would not have done had full and truthful disclosures been made. *Id.* ¶ 17.

## II.

■ A motion to dismiss cannot be granted unless the allegations in the complaint taken as true fail to state any claim upon which relief can be granted. *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.1985) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling upon a motion to dismiss, a district court must accept as true all facts alleged in the complaint, and view them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir.1997) (quoting *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir. 1996)).

■ Normally, a district court deciding a motion to dismiss will not consider documents that are not a part of the pleadings. "However, an exception to the general rule is that a 'document *integral* to or *explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Burlington Coat,* 114 F.3d at 1426 (quoting *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996) (emphasis added)); *see also In re Donald J. Trump Casino Securities Litig.,* 7 F.3d 357, 368 n. 9 (3d Cir.1993) (approving the consideration of a prospectus attached to a motion to dismiss in a securities action because the plaintiff's claims were based on the document). This obviously includes exhibits attached to a complaint. *Kania v. Archdiocese of Philadelphia,* 14 F.Supp.2d 730, 736 n. 3 (E.D.Pa.1998); *Horizon Unlimited, Inc. v. Silva,* No. 97–7430, 1998 WL 88391, *2 (E.D.Pa. Feb. 26, 1998), *reconsideration denied,* 1998 WL 150999 (E.D.Pa. Mar. 27, 1998). Indeed, in the event of a factual discrepancy between the pleading and the attached exhibit, the exhibit controls. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n. 8 (3d Cir.1994).

### III.

■ Defendant Compucare seeks dismissal of count four of plaintiff's complaint, which purports to state a claim for breach of implied warranty. In that count, plaintiff avers that "[t]he medical information systems transferred to Sunquest by Compucare as part of a voluntary transaction creating an interest in property were subject to the implied warranties of merchantability ... and fitness for a particular purpose prescribed by the Uniform Commercial Code...." Dkt. no. 1, ¶¶ 54–55. Defendant argues that "the transaction between Compucare and Sunquest was a sale of stock, not a sale of Antrim's assets, and, therefore, no warranties were created regarding Antrim's assets, other than those specifically set forth in the Stock Purchase Agreement." Dkt. no. 7, at 4 (emphasis deleted). I agree with defendant.

■ Assuming, without deciding, that a sale of securities is properly treated as a sale of goods under Article II of the UCC, only three implied warranties are created in such a transaction: title, genuineness and validity. *Independent Order of Foresters v. Donaldson Lufkin & Jenrette, Inc.*, 919 F.Supp. 149, 153 (S.D.N.Y.1996) (citing 8 *Williston on Contracts* §§ 254A, 954C). Plaintiff does not allege that any of these three warranties was breached. Instead, plaintiff asks this court to treat the stock purchase as, in substance, an asset sale and apply the warranties of merchantability and fitness as if the transaction were a sale of goods, specifically Antrim's software. I cannot do so.

■ Paragraph 1.1 of the SPA and paragraph 9 of the complaint both characterize the disputed transaction as a sale of stock, not an asset sale, yet plaintiff alleg-

es that it was Antrim's computer systems that were flawed. Dkt. no. 1, ¶¶ 20, 22, 23, 25. It is axiomatic, of course, that there can be no breach of warranty without a sale, *Whitmer v. Bell Tel. Co.*, 361 Pa.Super. 282, 522 A.2d 584, 588 (1987), which involves the passage of title from seller to buyer, *id.; Miley v. Harmony Mill L.P.*, 803 F.Supp. 965, 969 (D.Del.1992). Sunquest, however, obtained only the shares of Antrim's stock, not title to its assets, as consideration for the $5 million it paid Compucare. Courts have routinely refused to recognize implied warranties in other contexts in which there was no passage of title, *see Whitmer*, 522 A.2d at 589 (purchase of telephone services); *Miley*, 803 F.Supp. at 969 (lease),[1] and I can discern no rationale for recognizing them here.

To be sure, plaintiff is able to cite several cases in which implied warranties were recognized in transactions other than sales. In *All States Leasing Co. v. Ochs*, 42 Or.App. 319, 600 P.2d 899, 909 (1979), an Oregon court recognized such a warranty in a lease of capital equipment. And, in *Newmark v. Gimbel's, Inc.*, 54 N.J. 585, 258 A.2d 697, 701 (1969), the New Jersey Supreme Court permitted an implied warranty claim to go forward in a case involving a permanent wave solution that caused injury when applied by a beautician in the employ of defendant. *See also Hoffman v. Misericordia Hosp.*, 439 Pa. 501, 267 A.2d 867 (1970) (blood transfusion). These cases, however, which concern, in the first instance, a transaction substantially in the nature of a sale and, in the second, a products liability case for personal injury in the last, waning days of the "citadel of privity," are inapposite here. Indeed, none of these cases, or any others cited by plaintiff, has gone so far as to recharacter-

---

**1.** Compucare also relies upon *Cryer v. M & M Mfg. Co.*, 273 So.2d 818 (La.1972) for the proposition that "[i]n the sale of an incorporeal right, the implied warranty includes the existence of the right at the time of the transfer and peaceable possession of that right.... It does not extend to a deficiency in a physical object to which the right may ultimately relate." *Id.* at 821. While generally a correct statement, *Cryer* was decided under the Louisiana civil law doctrine of redhibition, not under common law in general or the UCC in particular. Thus, it is not persuasive authority in the case *sub judice*.

ize a stock purchase as an asset sale and a sale of goods under the UCC.

In sum, I conclude that Sunquest purchased a 100% interest in the stock of Antrim, not, as plaintiff argues, "a property interest in defective goods...." Dkt. no. 13, at 9. Its implied warranty claim at count four will accordingly be dismissed.

## IV.

The more difficult question is whether, under Pennsylvania law, plaintiff can maintain claims for tortious misrepresentation where the underlying transaction was governed by a voluminous, detailed, integrated writing negotiated by sophisticated parties with the assistance of counsel and with the opportunity to perform due diligence. Count five asserts a claim for fraud, while count six pleads negligent misrepresentations and omissions. The elements of both claims are similar, except for the higher level of scienter and burden of proof for fraud. *See Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F.Supp.2d 371, 377, 384 (E.D.Pa.1998); *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889–90 (1994). Thus, I will address these two theories together.

## A.

Defendants argue that plaintiff's misrepresentation claims should be dismissed because this action fundamentally sounds in contract, not in tort, and under Pennsylvania's "gist of the action" doctrine, tort claims cannot be maintained when they essentially duplicate an action for breach of an underlying contract. I agree, but only as to defendant Compucare.

■ When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the "gist" or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is "collateral" to conduct that is primarily tortious. *Wood & Locker, Inc. v. Doran & Assoc.,* 708 F.Supp. 684, 689 (W.D.Pa.1989)

(Smith, J.) (dismissing negligence claim, but not reaching question whether fraud claim maintainable under gist of the action doctrine); *Accord Factory Market, Inc. v. Schuller Int'l, Inc.,* 987 F.Supp. 387, 394 (E.D.Pa.1997) (dismissing both fraud and negligence claims); *Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (negligence), *alloc. denied,* 548 Pa. 649, 695 A.2d 787 (1997); *Phico Ins. Co. v. Presbyterian Medical Serv. Corp.,* 444 Pa.Super. 221, 663 A.2d 753, 757 (1995) (same).

■ To further elaborate, contract actions arise from breach of duties mutually agreed to, while torts have their basis in violations of duties imposed as a matter of social policy. *Phico,* 663 A.2d at 757. Thus, the gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently, recklessly, wantonly or intentionally, if the gravamen of the claim is that the plaintiff failed to fulfill a promise. *Factory Market,* 987 F.Supp. at 394. Nor may a plaintiff "disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement in question." *Id.* Put simply, a plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is "merely another way of stating its breach of contract claim[,]" *id.* at 395, or when its success "would be wholly dependent upon the terms of the contracts...." *C.P. Cook Coal Co. v. Browning Ferris, Inc.,* No. 93–7085, 1995 WL 251341, *5 (E.D.Pa. Apr. 26, 1995) (negligence); *accord USX Corp. v. Prime Leasing, Inc.,* 988 F.2d 433, 440 (3d Cir. 1993) (dismissing tortious misrepresentation claim when same conduct formed basis for alleged breach of contract); *Horizon Unlimited,* 1998 WL 88391 at *5.

■ Defendants assert that counts five and six are based upon the same conduct that plaintiff claims amounted to a breach of contract and that plaintiff's success would be entirely dependent on the terms

of the SPA. As such, they maintain that the contract and both common law tort claims are intertwined and duplicative, precluding plaintiff as a matter of law from pursuing its fraud and negligent misrepresentation claims. Sunquest responds that "a plaintiff may maintain both fraud and contract claims in the same action when the plaintiff asserts that the defendant breached both specific contractual terms and a duty of care owed to the plaintiffs. . . ." Dkt. no. 13, at 10. According to Sunquest, which thereby all but concedes that its negligent misrepresentation claim is not maintainable, defendants fraudulently induced it to enter the SPA, which breached an independent, extracontractual duty.

Plaintiff relies upon five cases for the proposition that fraud and contract theories may coexist. *See Roadmaster Indus., Inc. v. Columbia Mfg. Co.,* 893 F.Supp. 1162, 1172 (D.Mass.1995); *Piezo Crystal Co. v. Uddeholm Corp.,* 870 F.Supp. 589, 594–98 (M.D.Pa.1994); *Fox's Foods, Inc. v. Kmart Corp.,* 870 F.Supp. 599, 608–10 (M.D.Pa.1994); *Westmont Indus., Inc. v. Weinstein,* 762 F.Supp. 646, 650 (M.D.Pa. 1989); *Boulevard Airport v. Consolidated Vultee Aircraft Corp.,* 85 F.Supp. 876, 878–79 (E.D.Pa.1949).

In *Piezo Crystal,* the plaintiff purchased defective metal from the defendant and sued for breach of contract and fraud. The court considered these claims on defendant's motion for summary judgment and permitted both to proceed. 870 F.Supp. at 596, 598. Absent from its discussion, however, was any analysis of whether, under the gist of the action doctrine, tort and contract claims could be maintained in the context of fraudulent inducement. Thus, the court's holding is at best sub silentio, and hence, of little persuasive value.[2] The *Westmont* case is similarly unpersuasive in that it also omitted to discuss the gist of the action doctrine, holding only that legal malpractice can sound in both contract and negligence at the same time. 762 F.Supp. at 650. *Boulevard Airport* is simply inapposite, as that case dealt only with the issue of whether it was improper, inconsistent pleading under the Federal Rules of Civil Procedure to assert fraud and breach of contract simultaneously.

*Fox's Foods,* however, meets the issue more directly. There, the plaintiff entered into a lease arrangement with the defendant, under which the latter was to construct a supermarket for plaintiff to occupy. Repeated assurances were made concerning the timely completion of the project, but delay nevertheless occurred, and plaintiff sued for breach of contract and fraud. Defendant argued that its assurances, "even if knowingly false when made, [could] not support a fraud claim since they relate to existing contractual obligations." 870 F.Supp. at 608. The court rejected this contention, in part because the case upon which defendant relied involved a mere unperformed promise, not fraud, and in part because some of the representations were made after the contract plaintiff "gave notice of default under the Lease, and may thus be viewed as intending to induce [plaintiff] to delay asserting contractual rights." *Id.* at 609. Yet even this case provides only modest support for the result Sunquest seeks here, asserting a fraud claim based upon representations made before the SPA was signed and which were excluded by its integration clause.

Additionally, plaintiff maintains that another case, *C.P. Cook Coal Co.,* militates in favor of permitting its misrepresentation claims to go forward. That court applied the gist of the action doctrine to bar plaintiff's negligence claim, 1995 WL 251341 at *4–*5, but, in a separate section of the opinion and without either analysis or citation of authority, it opined that issues of

---

2. The same can also be said of *Roadmaster,* which, additionally, was not decided under Pennsylvania law.

fact precluded granting summary judgment on plaintiff's fraud and negligent misrepresentation theories. *Id.* at *7. Once again, while the result favors plaintiff's desired outcome, the *reasoning* of the case is not persuasive.

Thus, it appears that none of plaintiff's cases provides substantial support for its position. Any remaining doubt is removed when the effect of the SPA's integration clause is examined. I turn now to that issue.

### B.

Paragraph 9.6 of the SPA contains the following integration clause:

**Entire Agreement.** This Agreement, together with the Exhibits and Schedules hereto and the Confidentiality Agreement dated July 27, 1996, constitute the entire agreement between the parties with respect to the subject matter of this Agreement, and is a complete and exclusive statement of those terms. It supersedes all understandings and negotiations concerning the matters specified herein, both oral and written.

Dkt. no. 1, Exh. A, ¶ 9.6. Defendants argue that this clause, and the parol evidence rule it triggers, seal the fate of plaintiff's fraudulent misrepresentation theory, while plaintiff strenuously contends that fraud in the inducement is an exception to inadmissibility of parol evidence and that those claims should survive. I agree with defendants.

Pennsylvania law on this point is not a model of clarity, having evolved in fits and starts over the last half century. *See 1726 Cherry St. Partnership v. Bell Atl. Properties, Inc.*, 439 Pa.Super. 141, 653 A.2d 663, 666–70 (1995); *Betz Labs., Inc. v. Hines*, 647 F.2d 402, 405 (3d Cir.1981). As a result, both parties have dredged up a number of reported, and apparently conflicting, cases to support their positions.

In *1726 Cherry St.*, plaintiffs owned a parcel of land in Center City Philadelphia which they sold to defendant under the terms of an integrated writing. During the negotiations, plaintiff alleged that defendant misrepresented its intentions concerning another parcel, and plaintiffs argued that they would have insisted upon a higher price for their land had they known the true state of affairs. *Id.* at 664–65. After exhaustively analyzing two seemingly conflicting lines of Pennsylvania decisional authority, the superior court barred plaintiffs' fraudulent inducement claim, opining:

In sum, [Pennsylvania law] permits the admission of parol evidence of representations concerning a subject dealt with in an integrated written agreement and made prior to or contemporaneous with the execution of the agreement to modify or avoid the terms of that agreement only where it is alleged that the parties agreed that those representations would be included in the written agreement but were omitted by fraud, accident or mistake. This is commonly referred to as "fraud in the execution" because the party proffering the evidence contends that he or she executed the agreement because he or she was defrauded by being led to believe that the document he or she was signing contained terms that were actually omitted therefrom. Such a case is to be distinguished from a "fraud in the inducement" case such as the instant one, where the party proffering evidence of additional prior representations does not contend that the parties agreed that the additional representations would be in the written agreement, but rather claims that the representations were fraudulently made and that but for them, he or she never would have entered into the agreement.

*Id.* at 666. It continued:

Under these circumstances what the [plaintiffs] seek to do is exactly what the Pennsylvania parol evidence rule forbids: to admit evidence of a prior representation in a fully integrated written agreement. If the [plaintiffs] intended to rely on what they now contend was a

centrally important representation conveyed by Bell Atlantic in the course of the negotiations over a multimillion dollar commercial real estate transaction, then the [plaintiffs] should have insisted that the representation be set forth in their integrated written agreement. They are now barred from eliciting parol evidence that they were fraudulently induced into entering the contracts.

*Id.* at 670.

In another case decided on the same day as *1726 Cherry St.*, the Supreme Court of Pennsylvania, held essentially the same way. In *HCB Contractors v. Liberty Place Hotel Assocs.*, 539 Pa. 395, 652 A.2d 1278 (1995), a contractor asserted mechanics' liens despite having signed waivers of the right to do so, contending that its agreement to those waivers was fraudulently induced. The court, however, held that the integration clause barred plaintiff from successfully arguing fraud in the inducement because its "claims relate[d] to subjects that were specifically addressed in the written contract." *Id.* at 1279.

A year-and-a-half later, the Third Circuit applied *HCB* and *1726 Cherry St.* in a case in which plaintiff's candy distributorship was terminated and plaintiff asserted claims for breach of contract and fraud in the inducement. *See Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir.1996). The court applied the parol evidence rule and held that the integrated contract precluded relief on plaintiff's fraud claim. *Id.* at 1299–1301. Other recent district court decisions have reached similar holdings. *See Regent Nat'l Bank v. Dealers Choice Automotive Planning, Inc.*, No. 96–7930, 1997 WL 786468, *5–*6 (E.D.Pa. Nov. 26, 1997) (barring tort claim for fraud and noting that Pennsylvania's approach to parol evidence is "peculiar" to that jurisdiction); *Falbo v. State Farm Life Ins. Co.*, No. 96–5540, 1997 WL 116988, *4–*5 (E.D.Pa. Mar. 13, 1997) (barring fraud in the inducement asserted in breach of contract claim, but not passing on whether parol evidence rule likewise bars independent fraud claim); *Stamford, Inc. v. Color Works, Inc.*, No. 94–6278, 1996 WL 557328, *2 (E.D.Pa. Sep. 30, 1996) (barring fraud claim and noting that parol evidence rule applies to bar both representations that contradict the contract and those that "would add to the terms of the agreement[ ]").

More recently, in *Horizon Unlimited*, Judge Shapiro in the Eastern District of Pennsylvania dismissed claims for fraud and negligent misrepresentation under similar circumstances, 1998 WL 88391 at *4–*6. There, plaintiff had purchased an airplane in kit form and sued when it allegedly failed to perform as promised in the sales brochure. The contract, however, was integrated and disclaimed any reliance on the promotional literature. *Id.* at *4, *6. While the *Horizon* court followed *HCB*, it appeared to hold that its result would have been different had plaintiff alleged fraud in the inducement, a pronouncement that Sunquest seizes upon. It is evident from a close reading of the opinion, however, that the court misspoke, confusing fraud in the inducement with fraud in the execution:

> [I]t is not sufficient for a plaintiff to allege that defendants made fraudulent misrepresentations; the plaintiff must allege fraud in the inducement, that is, "the representations were fraudulently or by accident or mistake omitted from the integrated written contract." *HCB Contractors*, 652 A.2d at 1279. " '[I]f it were otherwise, the parole evidence rule would become a mockery, because all a party to a written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were fraudulently made.' " *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20, 23 (1968).

1998 WL 88391 at *4. The *HCB* court never refers to this as fraud in the inducement, but, as stated *supra*, the *1726 Cherry St.* opinion clearly refers to the fraudulent omission of agreed-upon terms from the final writing as fraud in the execution.

653 A.2d at 666; *accord Dayhoff*, 86 F.3d at 1300.[3] Thus, *Horizon Unlimited*, rather than aiding Sunquest, actually supports defendants' position.

Many of the other cases cited by Sunquest for the proposition that fraud in the inducement claims may be brought despite the presence of an integrated writing disclaiming prior oral evidence were decided under the law of New York, not Pennsylvania. *See Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir.1994) (citing N.Y. cases); *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315–17 (2d Cir.1993); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 601–02, 157 N.E.2d 597 (1959). Other cases have permitted such claims in disputed residential real estate sales, where defects were hidden and not readily discoverable by the buyer's inspection. *See Bowman v. Meadow Ridge, Inc.*, 419 Pa.Super. 511, 615 A.2d 755, 759 (1992) (applying parol evidence rule because "[t]his is not a case where the misrepresentation concerned the physical condition of the home and could not have been discovered by an inspection ...."); *Myers v. McHenry*, 398 Pa.Super. 100, 580 A.2d 860, 864 (1990); *Ward v. Serfas*, 387 Pa.Super. 425, 564 A.2d 251, 253–54 (1981); *Glanski v. Ervine*, 269 Pa.Super. 182, 409 A.2d 425, 428–30 (1979); *LeDonne v. Kessler*, 256 Pa.Super. 280, 389 A.2d 1123, 1126–1129 (1978).[4] These cases are *sui generis* within that context, however, and have no applicability when residential real estate is not involved. *See HCB*, 652 A.2d at 1280; *1726 Cherry St.*, 653 A.2d at 669–70 n. 6.

Sunquest cites *Betz* and *Berger v. Pittsburgh Auto. Equip. Co.*, 387 Pa. 61, 127 A.2d 334 (1956), for the proposition that fraud in the inducement acts as an exception to the parol evidence rule even outside the residential property context. In *Berger*, plaintiff leased a building to store auto parts based upon the oral representation that the flooring could stand the weight, and the court held the parol evidence rule did not apply. 127 A.2d at 335. *Betz*, coincidentally enough, also involved fraudulent misrepresentations concerning the strength of a floor. There, in a thorough exposition of Pennsylvania caselaw authored by Judge Weis, the court concluded that the "premise that evidence of fraud should be to the issue of execution of the agreement is not a sound one today." 647 F.2d at 407. Instead, it predicted "that if this case were presented to the Pennsylvania Supreme Court, it would hold that evidence of fraud in the inducement is outside the parol evidence rule and, consequently, admissible." *Id.* at 408.

Unfortunately for Sunquest, *Berger* was subsequently rejected by both *1726 Cherry St.*, 653 A.2d at 668–69, and *HCB*, 652 A.2d at 1280. Similarly, the Third Circuit in *Betz* was noted by the *1726 Cherry St.* court as having reached a contradictory result to the holding adopted by the superior court. 653 A.2d at 668 n. 4. That observation, particularly when coupled with the similar holding of the supreme court in *HCB* issued the same day, completely undermines whatever predictive

---

**3.** The *Dayhoff* court also explained the distinction between these two types of fraud:

> Fraud in the execution applies to situations where parties agree to include certain terms in an agreement, but such terms are not included. Thus, the defrauded party is mistaken as to the contents of the physical document that it is signing. Parol evidence is admissible in such a case only to show that certain provisions were supposed to be in the agreement but were omitted because of fraud, accident, or mistake. Fraud in the inducement, on the other hand, does not involve terms omitted from an agreement, but rather allegations of oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement.

86 F.3d at 1300.

**4.** *See also Abrams v. Crown*, 178 Pa.Super. 407, 116 A.2d 331 (1955). That case, in addition to involving residential real estate, is an example of fraud in the execution rather than fraud in the inducement. An agreed-upon condition precedent was fraudulently omitted from the writing. *Id.* at 332.

value *Betz* may have had; indeed, when the Third Circuit revisited the issue in *Dayhoff, Betz* went uncited. *See* 86 F.3d at 1298–1301.[5]

Accordingly, I conclude that the integration clause bars whatever fraud in the inducement claims Sunquest may have otherwise had against Compucare.[6] It does not, however, bar those claims against Dean Witter, which was not a party to the SPA.[7] For that reason, and because Sunquest also alleges that Compucare made fraudulent omissions, I will analyze defendants' remaining arguments.

### C.

Sunquest argues that, whatever result may obtain on defendants' affirmative misrepresentations, they should still be held liable for their omissions. According to plaintiff, defendants failed to disclose facts about Antrim that were peculiarly within their knowledge and not susceptible of easy discovery by Sunquest during its due diligence review.

■■■■ It is axiomatic, of course, that silence cannot amount to fraud in the ab-

sence of a duty to speak. *E.g., Drapeau v. Joy Tech., Inc.,* 447 Pa.Super. 560, 670 A.2d 165, 171 (1996) (Beck, J., concurring) (citing *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232 (1992); *Wilson v. Donegal Mut. Ins. Co.,* 410 Pa.Super. 31, 598 A.2d 1310 (1991); *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188 (1989)). This duty does not normally arise unless there is a confidential or fiduciary relationship between the parties. *See Drapeau,* 670 A.2d at 171 (citing *Federal Land Bank v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979); *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463 (M.D.Pa.1985)). A typical business relationship does not form the basis for such a relationship unless "one party surrenders substantial control over some portion of his affairs to the other." *Drapeau,* 670 A.2d at 172 (citing *In re Scott's Estate,* 455 Pa. 429, 316 A.2d 883 (1974)).

■■■■ Sunquest does not argue that there was a fiduciary or confidential relationship between the parties here. Instead, relying upon *Fox's Foods,*[8] it posits

---

**5.** There is, however, one district court opinion to the contrary. In *CoreStates Leasing, Inc. v. Housewright,* No. 96–8678, 1998 WL 151028, *8 (E.D.Pa. Mar. 31, 1998), the court noted the *1726 Cherry St.* decision of the superior court, but considered itself bound by the Third Circuit's decision in *Betz.* Notably, however, the court did not consider *Dayhoff* or the supreme court's opinion in *HCB* in reaching its decision. For that reason, I find it unpersuasive.

**6.** Sunquest argues that the integration clause should still be held to have no effect, because it purports only to "supersede all understandings and negotiations" and does not explicitly exclude "representations." I reject this argument for two reasons. First, the integration clause in *Dayhoff* also failed to refer to representations, but the court nevertheless excluded the fraud claim. *See* 86 F.3d at 1299 n. 11. Second, the alleged "representations" were by definition made during, and as a part of, the "negotiations" which are explicitly excluded by the integration clause. Sunquest asserts a semantic distinction which lacks legal consequence.

**7.** Dean Witter relies on two cases to support its argument that, as Compucare's agent, it should receive the benefit of the integration clause against Sunquest's fraud claims. *See Bowman,* 615 A.2d at 759; *Iwashyna v. Department of Housing and Urban Dev.,* No. 93–1138, 1993 WL 313702, *4 (E.D.Pa. Aug. 16, 1993). Both of these cases are distinguishable, because the integration clauses, unlike here, specifically referred to the representations of the agents as barred.

**8.** Sunquest also relies upon *Zimmerman v. Susie,* 534 F.Supp. 626, 629–30 (M.D.Pa. 1982). That case, however, involved the duty of a representative of the federal Farmers Home Administration to perform a termite inspection of a residence. The court held that, because the inspection was performed in the course of the representative's normal duties, a claim would lie in misrepresentation under Pennsylvania law. Because sovereign immunity under the Federal Tort Claims Act has not been waived for misrepresentation claims, the case was dismissed for lack of subject matter jurisdiction. The core holding of the court is that, under section 552(1) of the Restatement (Second) of Torts, "[t]he duty

a duty arising under section 551(b)(2) of the Restatement (Second) of Torts.[9] In *Fox's Foods*, a case involving assurances to complete construction of a building when the defendant actually held other projects in higher priority, the court opined that a party making an "incomplete" representation that could be misleading if left to stand alone is under a duty to disclose such other facts as may be necessary to make the initial statement clear. *See* 870 F.Supp. at 611

*Fox's Foods* and section 551(b)(2) of the Restatement are both inapposite to the case at bar. Again, Sunquest tries to pretend that the integration clause either does not exist or has no legal force. As I have already concluded after discussion, *supra*, the integration clause and the parol evidence rule preclude any evidence of affirmative misrepresentations. For purposes of this legal analysis, then, there were no partial or ambiguous statements that would be misleading absent disclosure of other facts. Thus, no duty to speak ever arose within the meaning of section 551(b)(2). Plaintiff's argument, properly considered, is nothing more than an attempted bootstrap around the integration clause. Accordingly, plaintiff's fraud claim based upon omissions by Compucare fails.[10]

### D.

■ In order to assert a claim for either fraud or negligent misrepresentation, the plaintiff must show justifiable reliance on the allegedly untrue statement or omission. *Gibbs*, 647 A.2d at 889, 890. In the context of Sunquest's claims against Compucare, that showing is impossible to make. As a matter of basic logic, Sunquest simply cannot be said to have relied upon representations specifically excluded by the integration clause.

■ The same cannot be said for Sunquest's claims against Dean Witter. There, the integration clause does not apply, but both defendants also argue that because Sunquest is a sophisticated party that had the opportunity to inspect Antrim before the closing, it cannot, as a matter of law, assert misrepresentation or omission claims. *See Wittekamp v. Gulf & W., Inc.*, 991 F.2d 1137, 1144–45 (3d Cir.1993) (sophisticated party with access to information); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Inv.*, 750 F.Supp. 711, 718 (W.D.Pa.1990) (Smith, J.) (sophisticated party), *aff'd*, 951 F.2d 1399 (3d Cir.1991); *Josephs v. Pizza Hut, Inc.*, 733 F.Supp. 222, 227 (W.D.Pa.1989) (Smith, J.) (sophisticated party), *aff'd mem.*, 899 F.2d 1217 (3d Cir.1990); *Forms, Inc. v. American Std., Inc.*, 546 F.Supp. 314, 319 (E.D.Pa.1982) (access to information), *aff'd mem.*, 725 F.2d 667 (3d Cir. 1983); *In re Gross*, 48 B.R. 674 (Bankr. E.D.Pa.) (access to information), *modified on other grounds*, 51 B.R. 480 (Bankr. E.D.Pa.1985), *modified sub. nom. Gross v. Schnepper*, 62 B.R. 323 (E.D.Pa.1986); *Emery v. Third Nat'l Bank*, 314 Pa. 544, 171 A. 881 (1934). All of these cases,

---

**9.** That section provides, in pertinent part:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated; . . .
>
> (b) matters known to him that he knows may be necessary to prevent his partial or ambiguous statement of facts from being misleading[.]

of using reasonable care applies not only to the passing of information but also to the gathering of the information." *Id.* The case at bar does not involve allegations of information collected negligently, but of affirmative misrepresentations and nondisclosures. As such, *Zimmerman* is inapposite. Moreover, in *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir.1995), the Third Circuit specifically rejected the application of section 552 to situations in which the parties are in contractual privity, opining that "the policies behind tort law are not implicated[.]"

**10.** Because Dean Witter was not a party to the SPA, Sunquest is not barred from making its omissions claims against that defendant, for the reasons discussed *supra* regarding affirmative misrepresentations.

however, were decided on more fully developed factual records at or beyond the summary judgment stage; none was adjudicated on a motion to dismiss. I therefore conclude that defendants' argument is premature, as the level of plaintiff's sophistication and the opportunity it was given to perform its due diligence review are factual issues inappropriate for resolution upon only the face of the complaint and the SPA.

### E.

Defendants also urge me to dismiss plaintiff's misrepresentation claims under the economic loss doctrine. This issue has not been well briefed by any of the parties, and it is mostly argued in a series of dueling footnotes. Nevertheless, because the economic loss doctrine, if it applies, would result in the dismissal of Sunquest's fraud and negligent misrepresentation claims against Dean Witter, I will analyze its applicability.

In *Palco Linings, Inc. v. Pavex, Inc.*, 755 F.Supp. 1269, 1271 (M.D.Pa.), *adhered to on reconsideration*, 755 F.Supp. 1278 (M.D.Pa.1990), the court explained that "[t]he rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.... A buyer, contractor, or subcontractor's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." (citation and inter-

nal quotation marks omitted); *accord Factory Market*, 987 F.Supp. at 395–96. *Palco* was an action by a subcontractor against an engineering firm under contract to the City of Philadelphia. The subcontractor argued that the engineering firm, with which it did not stand in privity of contract, committed negligent misrepresentation which caused the subcontractor to suffer additional expenses. The court granted summary judgment for defendant on the ground that the economic loss doctrine precluded the negligent misrepresentation claim, even though because of lack of privity plaintiff had no remedy for breach of contract. *Id.* at 1277.[11]

The *Palco* court noted, however, that two exceptions exist to the economic loss rule. First, if the misrepresentation is intentionally false, that is, fraudulent, the plaintiff's fraud claim may proceed. *Id.* at 1274. Second, under section 552 of the Restatement (Second) of Torts, if the defendant is "in the business of supplying information for the guidance of others [and] makes negligent misrepresentations[,]" plaintiff's claim is not barred.[12] *Accord Auger v. Stouffer Corp.*, No. 93–2529, 1993 WL 364622, *5 (E.D.Pa. Aug. 31, 1993). At this stage of the proceedings, I conclude that both exceptions could apply, depending upon the factual record developed during discovery.

First, Sunquest expressly pleads that Dean Witter[13] made fraudulent misrepre-

---

11. In *Duquesne Light,* however, the Third Circuit implied that the economic loss doctrine may not apply unless the plaintiff at least potentially has a contract-based remedy available. 66 F.3d at 620 ("The economic loss doctrine ... only covers situations in which a party in privity of contract with another suffers an injury to a product itself, resulting in purely economic loss."); *see also Lower Lake Dock Co. v. Messinger Bearing Corp.,* 395 Pa.Super. 456, 577 A.2d 631, 635 (1990) (plaintiff, through its own actions, foreclosed any remedy in contract).

12. With respect to the engineering firm, the court opined that the firm "cannot be said to be in the business of supplying information for the purpose of inducing additional action

by the plaintiff.... It is illogical to state that defendant was doing any more by way of its representations to the plaintiff than what it was already contractually bound to the City to do." *Id.* at 1275. At least one court applying Pennsylvania law has expressly disagreed with this conclusion. *See Diaz Contracting, Inc. v. Lisbon Contractors, Inc.,* No. 88–9203, 1991 WL 101427, *2–*3 (E.D.Pa. Jun. 10, 1991) ("Design professionals such as ... engineers ... are engaged for the very purpose of providing plans and specifications for a construction project.").

13. Because all misrepresentation claims against Compucare have been dismissed on other grounds, I need not consider whether

sentations, so the first exception is triggered. *See Auger,* 1993 WL 364622 at *5. Second, given the role of an investment banker like Dean Witter in bringing parties together in mergers and acquisitions, it may well be that Dean Witter will be shown to have been in the business of supplying information about Antrim that potential buyers, such as Sunquest, could be expected to rely upon. Thus, while Dean Witter might prevail at the summary judgment stage after the record is developed, it is premature to dismiss the fraud and negligent misrepresentation claims under the economic loss doctrine on a Rule 12(b)(6) motion. *See Forest Elec. Corp. v. HCB Contractors,* No. 91–1732, 1992 WL 233371, *3 (E.D.Pa. Sept. 8, 1992).

### V.

Count VII sets forth federal claims under section 10(b) of the 1934 Exchange Act, while count VIII asserts similar claims under the Pennsylvania Securities Act. These two statutory claims have the same elements, and will be treated together. *See Feret v. Corestates Financial Corp.,* No. 97–6759, 1998 WL 426560, *17 n. 17 (E.D.Pa. July 27, 1998); *Raykhman v. Digital Elevator Co.,* No. 93–1347, 1993 WL 370988, *3 (E.D.Pa. Aug. 30, 1993). Indeed, the elements of both are almost identical to those of common law fraud, *Raykhman,* 1993 WL 370988 at *5, and hence, I will discuss only those issues unique to securities fraud.

### A.

With respect to Sunquest's securities fraud claims against Compucare, the analysis is straightforward. I have already concluded that, because of the integration clause in the SPA, Sunquest could not have justifiably relied upon any of Compucare's misrepresentations or

the economic loss doctrine applies to those claims. I note, however, that the economic loss analysis appears similar, if not identical to, the application of the "gist of the action" doctrine.

omissions. Because justifiable reliance is manifestly an element of any securities fraud action, *see Braunstein v. Benjamin Berman, Inc.,* No. 89–5344, 1990 WL 192547, *7 (D.N.J. Sept. 12, 1990), Sunquest's securities fraud claims against Compucare must fail. *See id.* at *8–*9; *Jackvony v. RIHT Fin. Corp.,* 873 F.2d 411, 416 (1st Cir.1989) (Breyer, J.) (integration clause negated reasonable reliance in securities fraud action); *One–O–One Enters. Inc. v. Caruso,* 848 F.2d 1283, 1286–87 (D.C.Cir.1988) (Ruth Bader Ginsburg, J.) (same).

### B.

The more substantial issue is whether Sunquest's securities fraud claims against Dean Witter survive the instant motion to dismiss. Defendant argues that those claims, as pleaded, fail to meet the standards applicable under Fed.R.Civ.P. 9(b) or the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b). Under that section, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading[.]" 15 U.S.C. § 78u–4(b)(1). Moreover, if the securities fraud claim at issue requires a showing of scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Plaintiff and defendants fail to address whether the PSLRA imposed a higher standard of pleading than already existed under Rule 9(b) and how the two standards differ,[14] although, in

**14.** Indeed, plaintiff's briefs fail to address the PSLRA or the limited amount of caselaw interpreting it.

many respects, they appear to be identical.[15]

■ In order to properly plead securities fraud, Rule 9(b) requires

plaintiffs [to] plead with particularity the circumstances of the alleged fraud in such a way as to inject "precision and some measure of substantiation into their allegations of fraud." By way of example, allegations of "who, what, when, where and how: the first paragraph of any newspaper story," would satisfy the particularity requirement of Rule 9(b). *In re Westinghouse Securities Litig.*, 832 F.Supp. 948, 965 (W.D.Pa.1993) (citing, *inter alia, Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984)), *rev'd in part on other grounds*, 90 F.3d 696 (3d Cir.1996).

*In re Crown Am. Realty Trust Sec. Litig.*, No. 95–202J, 1997 WL 599299, *7 (W.D.Pa. Sep. 15, 1997) (Smith, J.); *accord In re Advanta Corp. Sec. Litig,* No. 97–4343, 1998 WL 387595, *3 (E.D.Pa. Jul. 9, 1998) (post-PSLRA), *aff'd,* —— F.3d ——, 1999 WL 395997 (3d Cir.1999); *Walish v. Leverage Group, Inc.*, No. 97–5908, 1998 WL 314644, *2 (E.D.Pa. Jun. 15, 1998) (post-PSLRA). Although *Burlington Coat* cautions that application of the rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud, 114 F.3d at 1418 (citations and internal quotation marks omitted), that court also recognized that "even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice." *Id.* Here, defendant argues that Sunquest has failed to meet this standard. I agree.

■ Plaintiff's pleading regarding Dean Witter's alleged fraud is sparse indeed. In paragraph 10, it alleges that:

During the negotiations in September, October and November 1996, Dean Witter ... made various representations to Sunquest regarding Antrim's products and operations. Those representations were made in written form in promotional materials supplied to Sunquest by Dean Witter ....

These promotional materials are not attached to the complaint, nor are they further identified or referenced. Paragraph 11, however, does contain a very general description of the nature (or, "what") of the misrepresentations allegedly made by both defendants, both orally and in writing:

a. Antrim's most recent laboratory and financial information system release was fully functional.

b. Antrim's most recent laboratory and financial information systems release was Year–2000 compliant (*i.e.*, capable of handling the transition through the Year 2000 without failure) and had been developed and beta-tested.

c. Antrim had released a fully functional information system that could connect reference laboratories with hospital laboratories at multiple sites to create integrated information-delivery networks.

d. Antrim had released a fully functional blood bank system to process and manage information on donors and transfusion services for medical laboratories and blood centers.

e. Antrim had net operating losses of at least $4.9 million that could be carried forward for federal income tax purposes by Sunquest after the Stock Purchase ....

It is also alleged in paragraph 13 that defendants made certain fraudulent omissions, most significantly that Antrim's software installations "were highly customized for each individual site[,]" "that there was virtually no technical documentation for the custom-designed systems[,]" that the "systems were not Year 2000 compliant," that the "multi-site laboratory information system was plagued by serious functionali-

---

15. Although it appears that the standard for pleading scienter is lower under Rule 9(b), the Third Circuit has held that the rule requires the same "strong inference" standard applied by the PSLRA. *Burlington Coat,* 114 F.3d at 1418.

ty and design deficiencies[,]" and "had not been successfully installed at Antrim's customers' sites." Finally, in paragraph 33, plaintiff avers that a Dean Witter employee, Andrew Lipsky, along with representatives of Compucare, orally "represented to Sunquest that Antrim's net operating loss carry-forward was $4.9 million."

This is problematic, at a minimum, because it is impossible to sort out from these allegations exactly what misrepresentations were made by Dean Witter in the promotional materials and what may have been misrepresented or omitted only by Compucare, as to which I have dismissed the securities fraud counts. The "who, when and where" are therefore insufficiently pleaded, and it is not reasonable to expect Dean Witter to frame a responsive pleading to these allegations. *See Klein,* 1998 WL 372559 at *4; *Walish,* 1998 WL 314644 at *3.

Moreover, Sunquest's allegations of scienter are insufficient. Scienter is properly pleaded by alleging facts giving rise to an inference that the defendant "knew or was reckless in not knowing" that its representations were false when made. *Burlington Coat,* 114 F.3d at 1422. This is accomplished by "(1) identify[ing] circumstances indicating conscious or reckless behavior by defendant[ ] or (2) alleg[ing] facts showing both a motive and a clear opportunity for committing the fraud." *Id.* "It is not enough for plaintiff[ ] to allege generally that defendant[ ] knew or recklessly disregarded each of the false and misleading statements for which they were sued...." *Id.* (citation and internal quotation marks omitted). "[R]ote allegations that Defendant[ ] knowingly made false statements of material fact with intent to deceive and defraud the Plaintiff[ ] do not meet the standards for pleading scienter...." *Walish,* 1998 WL 314644 at *4.

All plaintiff has done is to recite, in boilerplate fashion, that "Dean Witter made [its] material misrepresentations and omissions to Sunquest with reckless disre-

gard for the truth or with intention of deceiving and inducing Sunquest to take actions that would benefit ... Dean Witter, and to induce Sunquest to enter into a purchase of Antrim's stock for an excessive price." Dkt. no. 1, ¶ 16. Neither this conclusory recitation nor any other averment of the complaint identifies any action of Dean Witter that leads to an inference of conscious or reckless, as opposed to merely negligent or mistaken, conduct on the part of Dean Witter. "A plaintiff cannot simply couple a factual statement with a conclusory allegation of fraudulent intent to adequately plead scienter." *Walish,* 1998 WL 314644 at *3. *Accord Advanta,* 1998 WL 387595 at *8 (dismissing as insufficient "Plaintiff's catch-all allegation that all speakers knew that their statements were false when made").

Nor can it be successfully argued that plaintiff has successfully alleged motive and opportunity. In *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir.1994), the Second Circuit explained:

> Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.

*Id.* at 1130. Plaintiff's averments are insufficient. Assuming that Dean Witter's motive was to close the Antrim deal and make money for itself, the allegations against it are too unfocused to even evaluate what misrepresentations and omissions were made (the means) and how and why they were likely to secure a concrete benefit to defendant.

Thus seen, it is evident that plaintiff's allegations of securities fraud are deficient, both as to particularity and scienter. It is quite possible, of course, that plaintiff will be able to cure these pleading defects by amendment. Hence, I will dismiss counts VII and VIII against Dean Witter, but with leave to amend.

## VI.

Finally, Compucare argues that count IX of the complaint, which pleads rescission, should be dismissed.[16] I agree.

First, Sunquest seeks rescission only as a remedy against Compucare's alleged securities fraud and common law misrepresentations and omissions, all of which have been dismissed from this action. For that reason alone, the rescission claim must be dismissed.

Second, rescission is not available because Sunquest never tendered or attempted to tender its shares back to Compucare. It is axiomatic under Pennsylvania law that a party seeking rescission must "tender[ ] back [to the defendant] what [it] has received [so that it may sue] for what it has parted with[.]" *Wolgin v. Smith*, No. 94–7471, 1996 WL 355338, *2 (E.D.Pa. Jun. 21, 1996) (quoting *Associated Hardware Supply Co. v. Big Wheel Dist. Co.*, 355 F.2d 114, 120 (3d Cir.1965)); *accord Nocito v. Lanuitti*, 402 Pa. 288, 167 A.2d 262, 263 (1961); *Jiffy Lube Int'l, Inc. v. Jiffy Lube, Inc.*, 848 F.Supp. 569, 576–77 (E.D.Pa.1994).[17] Plaintiff has not pleaded that any attempt was made to tender the shares back to Compucare. Accordingly, its rescission claim fails and will be dismissed with prejudice.

## ORDER

AND NOW, this 24th day of March 1999, upon consideration of defendants' motions to dismiss portions of plaintiff's complaint, dkt. nos. 6, 11, and the responses thereto, it is hereby ORDERED and DIRECTED that:

1. defendant Compucare's motion to dismiss, dkt. no. 6, is GRANTED;

2. defendant Dean Witter's motion to dismiss, dkt. no. 11, is GRANTED IN PART AND DENIED IN PART;

3. Count IV of plaintiff's complaint is DISMISSED WITH PREJUDICE;

4. Counts V and VI of plaintiff's complaint are DISMISSED WITH PREJUDICE as to defendant Compucare only;

5. Counts VII and VIII of plaintiff's complaint are DISMISSED WITH PREJUDICE under Fed.R.Civ.P. 12(b)(6) as to defendant Compucare, and DISMISSED WITH LEAVE TO AMEND under Fed. R.Civ.P. 9(b) as to defendant Dean Witter;

6. Count IX of plaintiff's complaint is DISMISSED WITH PREJUDICE;

7. plaintiff shall file an amended complaint stating only the remaining claims against the appropriate defendants on or before April 15, 1999;

8. defendants shall answer or otherwise plead on or before May 6, 1999.

9. a case management conference will be held in my Johnstown chambers on Wednesday, May 12, 1999, at 4:15 P.M.

---

16. Sunquest does not seek rescission against Dean Witter, which was not a party to the SPA.

17. Plaintiff's cases are either inapposite or outdated. Two of them were decided under the law of other jurisdictions that do not enforce a strict tender rule. *See Prudential Ins. Co. v. BMC Indus., Inc.*, 630 F.Supp. 1298, 1301–02 (S.D.N.Y.1986); *Decoria v. Red's Trailer Mart, Inc.*, 5 Wash.App. 892, 491 P.2d 241, 242 (1971). *Ticheli v. Silmon*, 304 So.2d 792 (La.App.Ct.1974), is another redhibition case decided under Louisiana civil law. Finally, to the extent that *George v. Braden*, 70 Pa. 56, 57 (Pa.1871) purports to hold that tender of shares is not required before a claim for rescission can be maintained, I conclude it was implicitly overruled by *Nocito*. Unlike the Third Circuit, which is bound by its prior precedents unless sitting *en banc*, *see* Third Circuit Internal Operating Procedure 9.1, the Pennsylvania Supreme Court, like any court of last resort, has the power to overturn prior cases.