Michael J. ROSEN and
Stephen F. Schatz,

v.

COMMUNICATION SERVICES GROUP, INC., formerly known as Universal Teleservices Network Corp., et al.

No. CIV. A. 00–CV–3878.

United States District Court,
E.D. Pennsylvania.

May 2, 2001.

John N. Salla, Joseph M. Armstrong, Eizen Fineburg & McCarthy, P.C., Philadelphia, PA, for Michael J. Rosen, plaintiff.

Daniel J. Dugan, Kelly R. Ramsdell, Spector, Gadon and Rosen, P.C., Philadelphia, PA, for Stephen F. Schatz, plaintiff.

Marcy L. Colkitt, Peter Konolige, Marcy L. Colkitt & Assoc., Indiana, PA, Joel M. Sweet, Wolf, Block, Schorr and Solis-Cohen LLP, Philadelphia, PA, for defendants.

## MEMORANDUM

LUDWIG, District Judge.

In this securities fraud action, defendant Communication Services Group, Inc., formerly known as Universal Teleservices Network Corporation, and defendant Douglas R. Colkitt, M.D., move to dismiss the second amended complaint for failure to plead fraud with specificity, Fed. R.Civ.P. 9(b) or, in the alternative, for failure to state a claim, Fed.R.Civ.P. 12(b)(6).[1] Jurisdiction is federal question and supplemental, 28 U.S.C. §§ 1331, 1367.

### I. *Background*

The facts alleged in the complaint are as follows.[2] On September 11, 1997, plaintiffs Michael J. Rosen and Stephen F. Schatz sold their common stock in The Develop-

---

1. Under Rule 12(b)(6), the allegations of the complaint are accepted as true, and all reasonable inferences are drawn in the light most favorable to the plaintiff, and dismissal is appropriate only if it appears that plaintiff could prove no set of facts that would entitle her to relief. *See Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.,* 237 F.3d 270, 271 (3d Cir.2001).

2. On October 20, 2000, separate lawsuits brought by each plaintiff were consolidated. On November 20, 2000, plaintiffs filed an amended complaint. On January 17, 2001, defendants moved to dismiss, and on February 2, 2001, plaintiffs filed a second amended complaint as of course.

ment Center, Inc. (TDC), a Pennsylvania corporation, to Universal Teleservices of Pennsylvania Corporation (UTP), a Nevada corporation, pursuant to a Stock Purchase Agreement. Closing papers were put in escrow pending UTP's receipt of a letter of credit. At the time, UTP was an affiliate of Universal Teleservices Network Corporation (UTN), also a Nevada corporation, which, in turn, was owned by Dr. Colkitt.[3] Am. cmplt. ¶¶ 12–15.

In addition to cash, UTP issued to each plaintiff a secured convertible debenture, dated September 11, 1997, as consideration for the sale of TDC.[4] The debentures were convertible into common stock of UTN upon the occurrence of a "liquidity event," which included a public offering by UTN. Id. ¶¶ 14, 16; ex. A. Plaintiffs had received other offers, but the prospect of the public offering—and its impact on the value of the debentures—made UTP's offer unusually attractive. Id. ¶¶ 18–21. On September 22, 1997, UTP obtained a letter of credit and the transaction was closed. Id. ¶ 15.

Prior to the sale, plaintiffs "inquired about the financial and general well being of UTN, UTP and their controlling shareholder, Dr. Colkitt," and "learned of nothing that would inhibit UTN from going public." Id. ¶ 22. To the contrary, in the summer of 1997, Randy Warren, acting as Colkitt's agent and as President of UTP, represented to plaintiffs that Colkitt's management skills and financial expertise were the foundation of the successful operations of his companies. Id. ¶¶ 17, 22; ex.

A. On July 10, 1997, Warren and Colkitt's accountant gave Colkitt's personal financial statements to plaintiffs' business broker.[5] Id. ¶¶ 23, 28–31. The statements revealed that another company he controlled, Equimed, comprised as much as 30 percent of his assets. Id. ¶ 23.

Also, over the course of four or five conversations, Warren and Jones, another agent of Colkitt, told plaintiffs that UTN would make an initial public offering of its common stock "probably within a year." Id. ¶¶ 24–26. On September 18, 1997, Warren and Jones accompanied plaintiffs to Florida for a presentation by the brokerage firm Smith Barney and H.J. Meyers & Co., an investment banking company, regarding plans for UTN's public offering. At the four-day meeting, attended by 23 individuals representing 14 companies, including Equimed,[6] plaintiffs received "written materials concerning UTN going public." Id. ¶ 26. However, the public offering did not occur.

At some point after the sale was completed, plaintiffs discovered that, prior to the transaction: (1) Colkitt and companies he controlled were under investigation by the United States government for violation of the False Claims Act; and (2) deficiencies existed in Equimed's accounting practices that led to a dispute with its auditor, Ernst & Young. Id. ¶¶ 32–33. According to plaintiffs' allegations, had defendants timely disclosed this information—i.e., the impediments to UTN's public offering—

---

3. "UTP is not a party to this action because pursuant to an agreement to arbitrate, the within pled causes as action as they may lie against UTP are pending in the American Arbitration Association." Am. cmplt. ¶ 10.

4. Plaintiffs received $1.4 million, and each secured convertible debenture was in the amount of $1,050,000, at 6.11 percent inter-

est. Am. cmplt. ¶ 14. Colkitt did not sign the debenture agreements. Id. ex. A.

5. Colkitt's "Personal Financial Statement as of June 20, 1997" is attached to the complaint, am. cmplt. ex. B.

6. The complaint includes a list of those present, am. cmplt. at 8; ex. C.

the sale would not have been completed. *Id.* ¶ 35, 39.

■ Count one of the complaint alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5;[7] count two, violations of Pennsylvania Securities Exchange Act of 1972, 70 Pa.S. § 1–401; count three, common law fraud; count four, negligent and innocent misrepresentation; count five, civil conspiracy; and count six, promissory estoppel. The relief requested includes "(a) the difference in value between the Secured Convertible Debenture if UTN went public as represented and the value of the Secured Convertible Debentures if UTN did not go public and (b) their lost opportunity and profit had Plaintiffs sold their shares in TDC to other interested purchasers." Am. cmplt. ¶ 51.

Defendants' objections to the complaint, in summary, are as follows: (1) fraud was not pleaded with specificity, as required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. ¶ 78u–4 *et seq.* (the Reform Act); (2) the securities, common law fraud, misrepresentation, and estoppel counts fail to state an actionable claim; (3) the common law fraud and misrepresentation claims are barred by the integration clause of the Stock Purchase Agreement; and (4) the securities claims are time-barred. Defendants also maintain that, because the only basis for jurisdiction is the federal securities claim, supplemental jurisdiction should not be exercised.

## II. *Discussion*

### A. Dismissal: failure to plead with specificity

■ Securities fraud claims must comply with heightened pleading standards set forth in Rule 9(b) and the Reform Act.[8] *See EP MedSystems, Inc. v. EchoCath,* 235 F.3d 865, 880 (3d Cir.2000). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Although the rule ordinarily mandates plaintiffs to plead the "who, what, when, and where" details of the alleged fraud, the averments may contain specifics in some alternative fashion. However, plaintiffs must employ some means to "inject[ ] precision and some measure of substantiation into their allegations of fraud." *Se-*

---

7. Section 10(b) of the Securities Exchange Act provides that it is unlawful for any person to "use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe...." 15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful for a person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(b). These provisions establish a private right of action for plaintiffs to recover for false or misleading statements or omissions of material fact. *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 535 (3d Cir.1999).

8. Three purposes for the particularity requirement of Rule 9(b) are: (1) to put the defendant on notice so that a meaningful response may be prepared; (2) to prevent the use of a groundless claim as a pretext to uncovering a wrong which was done; and (3) to protect defendants from frivolous suits which could damage their reputations. *Seidman v. American Mobile Systems, Inc.,* 813 F.Supp. 323, 326 (E.D.Pa.1993); *see In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984).

The Reform Act is "primarily directed at the abuse and misuse of securities class action lawsuits where defendant companies choose to settle rather than face the enormous expense of discovery and trial." *EchoCath,* 235 F.3d at 881.

*ville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *compare Seville*, 742 F.2d at 791 (rule satisfied where complaint listed the specific pieces of equipment that were the subject of the alleged fraud, what equipment was involved in each of several alleged fraudulent transactions, and gave the content of the alleged misrepresentations), *with Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 675 (3d Cir.1988), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989) (complaint dismissed where it alleged "the general content of the representations," but did not specify "who the speakers were ... or who received the information ... ").

■ Our Court of Appeals has cautioned that Rule 9(b) should be applied flexibly and in a manner that is "sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud." *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir.1983). Therefore, the particularity rule is relaxed "when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Lit. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989).

■ Under the Reform Act, the complaint must set forth "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." [9] 15 U.S.C. § 78u–4(b)(1). The Reform Act also requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]," 15 U.S.C. § 78u–4(b)(2). "This language ... requires plaintiffs to plead 'the who, what, when, where, and how' " of each act or omission giving rise to a fraudulent state of mind. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir.1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). But it is "sufficient for plaintiffs [to] plead scienter by alleging 'facts establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.' " *Advanta*, 180 F.3d at 534 (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 n. 8 (3d Cir.1997)).[10]

**9.** The Reform Act:
(1) Misleading statements and omissions
In any private action arising under this chapter in which the plaintiff alleges that the defendant—
(A) made an untrue statement of material fact; or
(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind
In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
15 U.S.C. § 78u–4(b).

**10.** Our Court of Appeals recently recognized the difficulty in applying the mandates of the Reform Act to a situation similar to that presented here. In *EP MedSystems, Inc. v. EchoCath*, the decision explained:
At the outset, it is important to recognize that there are important distinctions be-

■ Here, the pertinent misleading statements as specified by the complaint:[11] "during the summer of 1997, over the course of 4 or 5 conversations UTN and Dr. Colkitt, through their agents, Randy Warren and Deanna Jones, represented to Plaintiffs that UTN would make an initial public offering of its common stock ... 'probably within a year.'" Am. cmplt. ¶ 25. The statements were misleading, the complaint states, because:

Although UTN, through its agents, and Dr. Colkitt himself through his agents knew of facts material and critical to Plaintiffs making a proper determination of the value of the Secured Convertible Debenture, UTN and Dr. Colkitt failed to disclose the following facts:

(a) the true financial condition of UTN and Dr. Colkitt;

(b) the devastating effect Dr. Colkitt's financial and legal troubles with Equimed would have on the ability of UTN to go public, including without limitation:

(1) that Equimed had no procedures in place to assure all adjustments to Equimed's accounting records, including general journal entries, are reviewed, approved and supported with documentation or appropriate explanations;

(2) that no procedures were in place to assure that routine recon-

tween this case and the usual securities actions for which these principals were developed.... [Plaintiff] MedSystems does not base its claim on public misrepresentations or omissions that affected the price of the stock it purchased. Instead, it contends that it was induced to make the substantial $1.4 million investment as a result of personal representations directly made to its executives by [defendant] EchoCath's executives and that those representations were false and misleading.

In one sense, this action is more akin to a contract action than a securities action, and that may be the claim encompassed in its state law fraud count the District Court did not consider. However, as MedSystems chose to base its initial claim on the securities law, we cannot fault the District Court for analyzing it as such. Nevertheless, the distinction between the fact pattern alleged here and that in the typical securities cases explains why it is difficult to apply the precedent from those cases to may of the issues. It is like the proverbial difficulty of fitting a square peg in a round hole. While the question whether EchoCath's alleged misrepresentations are immaterial as a matter of law can be readily considered under the precedent, it is far more difficult to do so with the subsequent issues, such as whether MedSystems pled scienter with sufficient particularity, failed to plead reasonable reliance, and failed to plead loss causation.

235 F.3d at 871–72.

11. Not having set forth the content of the representations or by or to whom they were made during the Florida presentation in September, 1997, the complaint does not meet the particularity requirements of Rule 9(b). *Saporito*, 843 F.2d at 675. Moreover, although the complaint mentions materials given to plaintiffs, it does not specify who authored the materials or why they were fraudulent, and they are not attached to the complaint. *See Sunquest Information Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 659–61 (W.D.Pa.1999) (representations that fraud was "made in written form in promotional materials supplied" to plaintiff was insufficient under Rule 9(b), in part, because materials could have been appended to the complaint). The list of participants at the conference has no apparent bearing on these matters and, therefore, cannot overcome the deficiency. Moreover, because the complaint does not explain why Colkitt's personal financial statement is misleading, it also does not satisfy the particularity requirements of Rule 9(b). *Saporito*, 843 F.2d at 675 (allegations should include "the general content" of the fraud). Because it is unreasonable to expect defendants to respond to non-specific allegations that misleading statements were made in Colkitt's financial statement and at the meeting in Florida, they cannot be considered a sufficient basis for plaintiffs' claims.

ciliations reviews and analysis of its significant account balances were performed on a timely basis;

(3) that Equimed had a dispute with the accounting firm of Ernst & Young, LLP concerning financial statements and the fees charged by that accounting firm; and

(4) that Equimed, Dr. Colkitt and other entities affiliated and/or controlled by Dr. Colkitt were being investigated and sued by the United States for fraud.

\* \* \* \* \* \*

Upon information and belief, prior to closing the Sale, both UTN and Dr. Colkitt knew of the proceedings brought by the United States against Dr. Colkitt, Equimed and other companies affiliated with Dr. Colkitt as evidenced by the case being filed in the United States District Court for the District of Maryland on August 2, 1995.

\* \* \*

Dr. Colkitt as controlling shareholder of Equimed, knew or was reckless with regard to his knowledge of the dispute with Ernst & Young regarding accounting issues. . . .

Am. cmplt. ¶¶ 33, 40–41.

██ While there are some factual allegations of fraud, the complaint falls short of the particularity requirements of Rule 9(b) and 15 U.S.C. § 78u–4(b)(1). For ex-

ample, as to representations made by Warren and Jones "during the summer of 1997," adequate allegations of date, time and place are lacking. Am. cmplt. ¶ 25. Moreover, the complaint does not specify whether Warren *or* Jones made the representations, or to which plaintiffs the statements were made. *Saporito*, 843 F.2d at 675 (complaint must "indicate who the speakers were ... and who received the information ... "). Plaintiffs have not "inject[ed] precision and some measure of substantiation into their allegations of fraud." *Seville*, 742 F.2d at 791. No explanation has been offered why the statements made by Warren and Jones could not be recounted in detail, albeit such information is obviously within plaintiffs' sphere of knowledge.[12]

██ The complaint also violates the clear mandate of the Reform Act to specify "each statement alleged to have been misleading." 15 U.S.C. § 78u–4(b)(1). Here, again, the allegation that "four or five" statements were made "during the summer of 1997" is illustrative. Am. cmplt. ¶ 25. The point is that defendants cannot be expected to frame a responsive pleading to relatively broad allegations, nor are they protected from a frivolous suit. *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1418 (3d Cir.1997) (the rule "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits

---

**12.** Our Court of Appeals has held that the requirements of Rule 9(b) should be relaxed where factual information is exclusively within the opposing party's knowledge or control, *Craftmatic*, 890 F.2d at 645. Even so, to comply with Rule 9(b) it is necessary to allege that the information lies within defendants' control and to set forth the reasons. *Id.; see Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285 (3d Cir.1992). Plaintiffs must also "de-

lineate at least the nature and scope of [their] effort to obtain, before filing the complaint, the information needed to plead with particularity" and demonstrate that they have "thoroughly investigate[d] all possible sources of information, including but not limited to all publicly available relevant information, before filing a complaint." *Shapiro*, 964 F.2d at 285.

brought solely to extract settlements").[13]

■ Leave to amend may be denied because of undue delay, bad faith, dilatory motive, prejudice, and futility. *Burlington*, 114 F.3d at 1434. Although plaintiffs filed a consolidated complaint and, subsequently, an amended complaint, there is a recognized reluctance "to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings...." *Id.* (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 547 (2d Cir.1979)). Plaintiffs will "be afforded an additional, albeit final op-portunity, to conform the pleadings" to Rule 9(b) and the Reform Act. *Id.*

**B. Dismissal: failure to state a claim**

■ Defendants also urge dismissal of the federal and state securities, fraud, and misrepresentation claims because: (1) the representations were no more than non-actionable promises of a future occurrence and were not misrepresentations of past or present material fact; and (2) loss causation has not been alleged.[14] More-

---

**13.** No facts are stated about the action alleged to have been brought by the United States against Equimed or about the dispute with Ernst & Young. Importantly, no attempt has been made to delineate "the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity" or demonstrated that they have "thoroughly investigate[d] all possible sources of information, including but not limited to all publicly available relevant information, before filing [the] complaint." *Shapiro*, 964 F.2d at 285.

As to scienter, while the complaint, arguably, does not set "forth facts that constitute circumstantial evidence of either reckless or conscious behavior," it does offer some facts tending to establish "motive or opportunity to commit fraud." *Advanta*, 180 F.3d at 534; 15 U.S.C. § 78u–4(b)(2); *see In re Equimed, Inc.*, 98–CV–5374, 2000 WL 562909, at *4 (E.D.Pa. May 9, 2000) (in a somewhat related action, Colkitt's alleged knowledge of "the existence of a lawsuit filed by the United States against Equimed" could not be inferred from his position in the company, and was not reckless or conscious behavior). The complaint alleges that defendants made misrepresentations to lure plaintiffs into "selling their shares [of TPC] for much less than the true value of those shares at that time." Am. cmplt. ¶ 46. Because "Colkitt was the controlling or sole shareholder of UTN, which in turn owned all or substantially all of the stock in UTP," UTN and Colkitt "had financial motivation to obtain Plaintiffs' stock in TDC for less than adequate consideration." *Id.* ¶¶ 12–13. The repeated promises of a public offering by Warren and Jones, taken with the ownership of UTN and Colkitt of UTP, are sufficient to create a "strong inference" of

motivation and opportunity to commit fraud. *See, e.g., In re Unisys Corp.*, No. A. 00–1849, 2000 WL 1367951, at *6 (E.D.Pa. Sept. 21, 2000) (opportunity for fraud clear where each defendant was a senior corporate officer who controlled public dissemination of information regarding the company at issue). Although "more than a showing that a predicted event did not occur [is generally required] in order to sustain a claim of fraud ... when multiple promised events fail to occur, there is a point where a strong inference of fraud can be made." *EchoCath*, 235 F.3d at 881 (citing *Advanta*, 180 F.3d at 536–37).

**14.** A valid securities fraud claim under § 10(b) and Rule 10b–5 requires: (1) that defendants made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which plaintiffs relied; and (5) plaintiffs' reliance was the cause of their injury. *EchoCath*, 235 F.3d at 871; *Kline v. First Western Government Securities, Inc.*, 24 F.3d 480 (3d Cir.1994). Section 401 of the Pennsylvania Securities Act is modeled after Rule 10b–5 of the federal securities laws, and requires virtually the same elements of proof. *Sunquest Information Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 659 (W.D.Pa.1999); *Goodman v. Moyer*, 523 F.Supp. 35, 39 (E.D.Pa.1981) ("In light of the similarity of the language used, and the similar policy carried out through Rule 10b–5 and sections 1–401 and 1–501 of the Pennsylvania Securities Act, the Court must conclude that Pennsylvania courts would require similar elements of proof in actions brought under those sections of the Pennsylvania Securities Act.").

over, defendants argue, the promissory estoppel claim is improperly asserted against Colkitt and UTN, instead of UTP, and, therefore, fails to state a claim.[15]

 According to defendants, the failure of UTN to make an initial public offering "is merely an unfulfilled possibility," and "a promise as to a future occurrence is not, as a matter of law, an act of fraud." Defs. mem. at 15, 27. Defendants rely on the Restatement Second of Torts:

> If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action for deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect. If the recipient wishes to have legal assurance that the intention honestly entertained will be carried out, he must see that it is expressed in the form of an enforceable contract, and his action must be on the contract.

An action for fraud includes the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was caused by the reliance. *Heffler v. Joe Bells Auto Serv.*, 946 F.Supp. 348, 353 (E.D.Pa.1996).

The elements of the tort of negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the presentation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).

Restatement (Second) of Torts ¶ 530(1) cmt. b. Nevertheless, a determination of whether statements were "honestly made [with] the intention in fact" to perform in the future entails questions of fact. *See Fox's Foods, Inc. v. Kmart Corp.*, 870 F.Supp. 599, 608 n. 11 (M.D.Pa.1994). Moreover, it cannot be ruled as a matter of law that defendants did not recognize the infeasibility of a public offering when the statements were made. *See Phoenix Technologies, Inc. v. TRW, Inc.*, 834 F.Supp. 148, 152 (E.D.Pa.1993) ("If one states an intention to take future action that does not actually comport with one's true state of mind at that time, it is a misrepresentation of an existing fact.") (citing cases).

 Defendants also maintain that plaintiffs "stood to gain upon the contingency of UTN possibly going public within a year, but suffered no risk whatsoever ... [and received] full consideration of $3.5 million." Def. mem. at 26. Therefore, defendants argue, the alleged mis-

Here, the materiality of the alleged omissions (the financial and legal troubles of Colkitt and Equimed) is indisputable—*i.e.*, the information "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available'" to influence plaintiffs' decision to sell their stock UTP. *See EchoCath*, 235 F.3d at 872 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988) (quotation omitted)).

15. Defendants also assert that the financial statements are not material because: (1) the suit brought by the government against Colkitt under the False Claims Act was a *qui tam* action, filed under seal on August, 2, 1995, and defendants were not aware of the action until August 24, 1998; and (2) litigation was commenced by Equimed against Ernst & Young in August, 1998, subsequent to the sale of UTP stock to plaintiffs. Defs. mem. at 19–20. Because of the pleading deficiencies relating to the financial statements, *see* note 11, *supra*, this argument need not be considered at this point.

representations were not the cause of plaintiffs' damages. A similar argument occurred in a case in which a plaintiff "claim[ed] that as a result of fraudulent misrepresentations made in personal communications by [defendant] executives, it was induced to make an investment ... which turned out to be worthless." *Echo-Cath*, 235 F.3d at 884. The decision:

The causation issue becomes most critical at the proof stage. Whether the plaintiff has proven causation is usually reserved for the trier of fact. [Plaintiff] MedSystems' complaint was dismissed at the pleading stage. Although, as noted above, the allegation that it "sustained substantial financial losses as a direct result of the aforementioned misrepresentations and omissions on the part of [defendant] EchoCath" could have more specifically connected the misrepresentation to the alleged loss, *i.e.*, investment in a company with little prospects, when we draw all reasonable inferences in plaintiff's favor, we conclude that Med Systems has adequately alleged loss causation.

*Id.* at 884–85. Although plaintiffs here do not assert that their investment was entirely worthless, the complaint alleges that as a direct result of the misrepresentations, losses were sustained because of the fraudulent overvaluation of the consideration received for their TDC stock. This is a sufficient pleading of loss causation.

 "[A] cause of action under a theory of promissory estoppel will lie when a party relies to his or her detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be." *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa.Super.1997). A promissory estoppel consists of: (1) misleading words, conduct or silence by the party against whom estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) there is no duty of inquiry on the party asserting the estoppel. *Id.* Plaintiffs here sue on the alleged promise made by defendants— holding out the potential to realize large profits by entering into an agreement with UTP. While defendants insist that if this claim lies at all, it is against UTP, and not Colkitt and UTN, the record must be developed to evaluate the relationships among Colkitt, UTP, UTN, Warren, and Jones.[16]

---

**16.** According to defendants, plaintiffs cannot succeed in an action for common law fraud or misrepresentation because the underlying transaction was governed by an integrated writing negotiated by sophisticated parties. Defendants rely on *Sunquest Information Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 659–61 (W.D.Pa.1999), for the proposition that the Pennsylvania parol evidence rule forbids evidence of a prior representation to prove fraud in the inducement in a fully integrated written agreement.

The Stock Purchase Agreement:
This Agreement, together with the Exhibits and Schedules referred to herein and the Non–Disclosure Agreement dated January 24, 1997, constitutes the entire agreement among the parties, and supersedes any prior or understandings, agreements or representation by or among the Parties, written or oral, to the extent they are related to the subject matter hereof.
Pltf. mem. ex. 1; *see Burlington*, 114 F.3d at 1426 (as an exception to the rule that documents that are not a part of the pleadings should not be considered in a motion to dismiss, "a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). However, consistent with plaintiffs' argument, because Colkitt and UTN were not "Parties" to the agreement, dismissal will not be granted on

## C. Dismissal: statute of limitations

 The statute of limitations for a cause of action under § 10(b) of the Securities Act and Rule 10b–5 is one year from the time a plaintiff discovers, or should have discovered, the facts constituting the violation and three years after the violation, whether discovered or not. *See Lampf, Pleva, Lipkind & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). On July 31, 2000, this action was commenced. According to defendants, because the accused false statements—that UTN would make an initial public offering "probably within a year"—allegedly were made in the summer and fall of 1997, plaintiffs were on inquiry notice by September, 1998, at the latest, when no public offering had occurred. Nevertheless, defendants have not shown why UTN's failure to make a public offering, without more, was sufficient to put plaintiffs on notice of potential fraud.

As one decision in our district has recently stated:

> The one-year period begins when plaintiffs had 'sufficient information of possible wrongdoing to place them on inquiry notice' or to excite 'storm warnings' of culpable activity.' This happens when 'a person of ordinary intelligence would have suspected that he or she was being defrauded.'

*In re Equimed, Inc.,* No. 98–CV–5374, 2000 WL 562909, at *9 (E.D.Pa. May 9, 2000) (quoting *Leach v. Quality Health Services Inc.,* 902 F.Supp. 554, 557 (E.D.Pa.1995)). According to the complaint, after plaintiffs were induced to enter into the agreement, defendants continued to conceal the truth regarding their intention and ability to make a public offering. Am. cmplt. ¶ 3. Inasmuch as the complaint does not suggest that plaintiffs should have suspected the fraudulent nature of the alleged conduct by September 1998, the claims may not be dismissed based on time-bar.

This memorandum follows an order dated May 1, 2001.

this basis. *See Sunquest,* 40 F.Supp.2d at 656 & n. 7 (integration clause did not bar fraud in the inducement claims against a defendant that was not a party to the agreement).